513 F.Supp. 995 (1981)
Jeffrey B. BATTLE et al., Plaintiffs,
v.
The LUBRIZOL CORPORATION et al., Defendants.
No. 80-538C(2).
United States District Court, E. D. Missouri, E. D.
May 11, 1981.
*996 Paul H. Schramm, St. Louis, Mo., for plaintiffs.
C. William Portell, Jr., Walter M. Clark and Richard Wolff, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This case is now before the Court on the motion of defendant Lubrizol Corporation for summary judgment. The instant motion relates to Counts I and II of plaintiffs' complaint, the only counts in which Lubrizol is named as a defendant. In those counts, plaintiffs[1] allege that Lubrizol conspired with co-defendants Jenkin-Guerin, Inc., a competitor of plaintiffs in the rustproofing materials market and a customer of Lubrizol, and Jack Krause, Jenkin-Guerin's chief operating officer, to cut off plaintiffs' supply to Lubrizol's rustproofing compound, Lubrizol 2085A. Lubrizol allegedly refused to sell Lubrizol 2085A to plaintiffs at the behest of Jenkin-Guerin and Krause, in order to protect Jenkin-Guerin *997 from price competition. These actions are allegedly violative of federal and state anti-trust laws, as well as common law.
Lubrizol's proof in support of the instant motion establishes that it initially decided to sell its rustproofing compound to plaintiffs after plaintiffs were recommended by Gordon Watson, a salesman for Jenkin-Guerin who subsequently left Jenkin-Guerin and joined Anchor Supply Co., Inc. In the negotiations leading to sales to plaintiffs, Jeffrey Battle represented to Lubrizol that he intended to market Lubrizol's product for marine applications, a previously untouched market. Lubrizol was satisfied with its distribution system as it related to the automotive rustproofing market, and would not have sold directly to plaintiffs had they merely sought to sell in that market. Battle's representation that he intended to pursue the marine market induced Lubrizol to sell directly to plaintiffs.
Lubrizol's decision to terminate plaintiffs as direct purchasers arises out of the foregoing factual background, none of which is seriously disputed by plaintiffs. After the initial sales of Lubrizol's product to plaintiffs, Lubrizol became aware that plaintiffs were not, in fact, pursuing the marine market. Lubrizol received calls from its co-defendants to this effect. Krause, in his capacity of chief operating officer of Jenkin-Guerin, complained to Lubrizol that plaintiffs were selling to Jenkin-Guerin's automotive customers at a price under that offered by Jenkin-Guerin. It is at this point that the parties' versions of the facts diverge.
Lubrizol contends, and has adequately supported this contention in the instant motion for summary judgment, that Krause's complaints about plaintiffs did not affect its decision to terminate its sales to plaintiffs. Lubrizol claims that plaintiffs were cut off because they were not pursuing the marine market as Lubrizol expected them to, and because Lubrizol considered Battle to have been untruthful in the negotiations leading up to the initial sales.
Plaintiffs, of course, contend otherwise. In support of their position that Lubrizol cut them off at its co-defendants' request due to plaintiffs' pricing policy, plaintiffs point to the admitted fact that Krause complained to Lubrizol about plaintiffs' competition and that plaintiffs were terminated shortly thereafter. Plaintiffs also rely on evidence to the effect that Krause had boasted to co-employees that he would force Lubrizol to cut off plaintiffs' supply, and that after phoning Lubrizol, Krause claimed to have arranged with Lubrizol to cut off plaintiffs.
A supplier is, of course, free to unilaterally choose with whom it will do business, United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), and the Sherman Act does not infringe upon the supplier's right to unilaterally decide not to deal with a particular buyer. The decision not to deal with a particular buyer must, in fact, be unilateral, however; if the decision is made in agreement with others an anti-trust violation may be found. Cernuto, Inc. v. United Cabinet Corp., 595 F.2d 164 (3rd Cir. 1979); Oreck Corp. v. Whirlpool Corp., 579 F.2d 126 (2d Cir. 1978). Lubrizol argues that summary judgment is appropriate in the instant case since the undisputed evidence establishes that its decision to cut off plaintiffs was made unilaterally and for valid business reasons. This Court can not agree.
In ruling on the instant motion for summary judgment, this Court must resolve all factual disputes in favor of plaintiffs. Plaintiffs' evidence shows that Krause complained to Lubrizol about plaintiffs' competition and about their sales to Jenkin-Guerin's customers at prices lower than those offered by Jenkin-Guerin, and that Lubrizol cut off plaintiffs' supply shortly after these complaints. This evidence, standing alone, is not sufficient to withstand the instant motion for summary judgment. Sweeny & Sons, Inc. v. Texaco, Inc., 637 F.2d 105 (3rd Cir. 1980); Oreck Corp. v. Whirlpool Corp., 639 F.2d 75 (2d Cir. 1980); Carr Electronics Corp. v. Sony Corp. of America, 472 F.Supp. 9 (N.D.Cal.1979).
Plaintiffs do not rest on only this evidence, however. They have also shown that *998 Krause said he intended to force Lubrizol to stop supplying plaintiffs with Lubrizol 2085A, and that after phoning Lubrizol, he boasted that he had done so. Lubrizol contends that even this evidence fails to establish concerted action on the part of the defendants. Though the evidence in this regard is slim and the requisite inference of concerted activity correspondingly great, this Court believes plaintiffs' evidence is sufficient to raise a jury question as to whether Lubrizol, in fact, acted unilaterally.
In any case in which a terminated buyer claims the termination was due to concerted action, there is likely to be no direct evidence of an agreement between the defendants. Rational businessmen simply do not put such agreements in writing. Absent a disillusioned ex-employee of one of the alleged conspirators who will testify to the alleged agreement, a terminated buyer must of necessity rely on circumstantial evidence to prove a conspiracy. The courts have held that termination following complaint by the competitors of the terminated buyer is not sufficient to allow an inference of conspiracy. Sweeny & Sons, Inc., supra; Oreck Corp. v. Whirlpool Corp., 639 F.2d 75 (2d Cir. 1980); Carr Electronics Corp., supra; cf. Girardi v. Gates Rubber Company Sales Division, Inc., 325 F.2d 196 (9th Cir. 1963). Even when not considering Krause's statements as proof of an actual conspiracy, the statements at least establish that Krause intended to reach an agreement with Lubrizol and thought that he had. Such evidence is obviously relevant to whether an agreement was actually reached. This Court believes this additional evidence is sufficient to allow an inference of concerted action.
Even assuming that this inference is allowable, however, Lubrizol contends that summary judgment is appropriate since plaintiffs can not show the necessary anti-competitive effect of the termination. A combination or agreement in restraint of trade is unlawful under the Sherman Act only if it unreasonably affects trade or commerce. Northern Pac. R. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). Under the "rule of reason" applied in such cases, it must be shown that the combination or agreement produced adverse, anti-competitive effects within the relevant product and geographic markets. Id. Some agreements or combinations are considered so lacking in redeeming virtue, however, that they are conclusively presumed illegal without inquiring into the actual effect on competition. Northern Pac. R. Co., supra. Such agreements are considered illegal per se.
Plaintiffs herein admit that they are unable to establish the anti-competitive effect necessary to prove a violation of the Sherman Act under the rule of reason. They contend, however, that they were terminated by Lubrizol to protect Jenkin-Guerin from price competition, and that this price-related termination constitutes a per se violation of the Sherman Act.
Combinations and agreements interfering with the pricing mechanisms of the free market have been particularly suspect under the Sherman Act. As the Supreme Court has stated, "price is the `central nervous system of the economy,' United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 226 n.59, 60 S.Ct. 811, 845-846 n.59, 84 L.Ed. 1129 and an agreement that `interfere[s] with the setting of price by free market forces' is illegal on its face. United States v. Container Corp., 393 U.S. 333, 337 [89 S.Ct. 510, 512, 21 L.Ed.2d 526]." National Soc. of Professional Engineers v. United States, 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). Several courts have therefore held that a per se violation of the Sherman Act is established upon proof that a manufacturer terminated its relationship with a distributor at the request of a competitor of the distributor, and that the termination was motivated by a desire to protect the competitor from price competition. Cernuto, Inc., supra; CUSCO v. Certain-teed Products Corp., 1980-81 T.C. ¶ 63,714 (7th Cir. 1981); Alloy International Co. v. Hoover-NSK Bearing *999 Co., 635 F.2d 1222 (7th Cir. 1980); Mannington Mills v. Congoleum Industries, Inc., 610 F.2d 1059 (3rd Cir. 1979). If the agreement to terminate the distributor is not premised on a price related end, however, the rule of reason is applicable. Oreck Corp. v. Whirlpool Corp., 579 F.2d 126 (2d Cir. 1978); Ron Tonkin Gran Turismo v. Fiat Distributors, 637 F.2d 1376 (9th Cir. 1981); Borger v. Yamaha Intern. Corp., 625 F.2d 390 (2d Cir. 1980); Resolution of the instant motion for summary judgment is therefore dependent on whether the alleged agreement was premised on a price related end, since plaintiffs admit they can not show an anti-competitive effect under the rule of reason.
Lubrizol's evidence in this regard has not been disputed by plaintiffs. Lubrizol never discussed with plaintiffs the price at which they should resell Lubrizol 2085A. Jeffrey Battle, in his deposition, even went so far as to state that Lubrizol told him that what he did with the product after he acquired it was none of Lubrizol's business, and that Lubrizol didn't want to know what Battle charged for it. Likewise, Gordon Watson testified that Lubrizol never suggested the price at which Jenkin-Guerin should resell the product. After it refused to sell directly to plaintiffs, Lubrizol put plaintiffs in contact with its Cleveland area distributor, who now supplies plaintiffs with all the Lubrizol 2085A they desire. Plaintiffs continue to resell the product at a price lower than that offered by Jenkin-Guerin.
Against this evidence that Lubrizol was not, in fact, motivated by a desire to protect Jenkin-Guerin from price competition when allegedly agreeing with Jenkin-Guerin to terminate plaintiffs, plaintiffs' only evidence is that Krause mentioned price when complaining to Lubrizol. This Court does not believe that this scant evidence is sufficient to withstand Lubrizol's motion for summary judgment. Plaintiffs must show that Lubrizol, as well as Jenkin-Guerin, was motivated by a desire to protect Jenkin-Guerin from price competition. Alloy International Co., supra at 1226 n.6. Plaintiffs simply have not controverted Lubrizol's cogent evidence to the contrary. Though there is sufficient evidence to allow the inference that Lubrizol terminated plaintiffs pursuant to an agreement with Jenkin-Guerin, evidence is totally lacking to support the inference that Lubrizol was motivated by a desire to protect Jenkin-Guerin from price competition. Even plaintiffs' evidence of Krause's intentions and statements, which would have little relevance to Lubrizol's motivation, does not show that Krause was concerned with price competition. Krause's statements, as related by an ex-employee of Jenkin-Guerin, were only to the effect that he would force Lubrizol to terminate plaintiffs  no mention is made of his motivation.
Summary judgment will therefore be entered in Lubrizol's favor with respect to plaintiffs' Sherman Act claim. Plaintiffs' claim under the Missouri Anti-trust Act is deficient for the same reasons, see § 416.141, R.S.Mo. (1974), and summary judgment will likewise be entered on that claim in Lubrizol's favor.
That leaves only plaintiffs' common law conspiracy count remaining against Lubrizol. This Court believes summary judgment in Lubrizol's favor is appropriate on this count also.[2] A civil conspiracy is a combination of two or more persons to do by concerted action an unlawful act, or to use unlawful means to do an act which is lawful. Rosen v. Alside, Inc., 248 S.W.2d 638 (Mo.1952); Rogers v. Poteet, 355 Mo. 986, 199 S.W.2d 378 (banc 1947). The unlawful object of the conspiracy alleged by plaintiffs is the alleged violation of the federal and state anti-trust laws. Since this Court has granted Lubrizol's motion for summary judgment on the anti-trust claims, it necessarily follows that summary judgment is appropriate on the conspiracy claim. Friedman Textile Co. v. Northland *1000 Shopping Center, 321 S.W.2d 9, 17 (Mo.App. 1959).
NOTES
[1] Plaintiffs in this case are Jeffrey and Karen Battle and two businesses which they control, Anchor Supply Co., Inc. and Bayview Service and Supply Co.
[2] Lubrizol asserts that this claim is raised by plaintiffs under this Court's pendant jurisdiction and should be dismissed since the federal claims have been dismissed. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Since it appears that this Court has diversity jurisdiction over this claim, the merits of the claim will be discussed.