712 F.2d 1238
 1983-2 Trade Cases P 65,488
 Jeffrey B. BATTLE; Karen Battle d/b/a Bayview Service and
Supply Co.; and Anchor Supply Co., Inc., Appellants,
v.
Gordon WATSON and Thomas Watson,
v.
The LUBRIZOL CORPORATION; Jenkin-Guerin, Inc.; and Jack K.
Krause, Appellees.
 No. 81-1585.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1982.
Decided July 12, 1983.
 
 Paul H. Schramm, M. Harvey Pines (argued), Schramm, Newman, Pines & Freyman, Clayton, Mo., for appellants.
 C. William Portell, Jr. (argued), Harry G. Neill, Jr., Richard Wolff, St. Louis, Mo., for appellees Jenkin-Guerin, Inc. and Jack K. Krause.
 Robert H. Rawson, Jr. (argued), A. Theodore Gardiner, III, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Walter M. Clark, Thomas E. Wack, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for appellee The Lubrizol Corp.
 Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON and FAGG, Circuit Judges. En Banc.
 
 
 1
 BRIGHT, Circuit Judge, with whom ROSS, JOHN R. GIBSON and FAGG, Circuit Judges, join.
 
 
 2
 Jeffrey B. Battle, Karen Battle and two businesses which they control, Anchor Supply Co., and Bayview Service & Supply Co., brought this action alleging that the Lubrizol Corporation, Jenkin-Guerin, Inc. and Jack K. Krause, president of Jenkin-Guerin, violated section one of the Sherman Act. The district court[1] granted defendants' motion for summary judgment. The court recognized that "termination following complaint by the competitors of the terminated buyer is not sufficient to allow an inference of conspiracy." Battle v. Lubrizol Corp., 513 F.Supp. 995, 998 (E.D.Mo.1981). However, the district court ruled that hearsay evidence in the form of Krause's boastful statements was sufficient to raise a jury question as to whether Lubrizol was participating in a conspiracy rather than acting unilaterally in terminating plaintiffs as a distributor. Id. at 997-98. Nonetheless, the district court held that the plaintiffs had no right to recovery because there existed no evidence warranting the inference that Lubrizol was motivated by a desire to protect Jenkin-Guerin from price competition. Id. at 999. A panel of this court reversed the district court's judgment on appeal. Battle v. Lubrizol Corp., 673 F.2d 984 (8th Cir.1982). In the course of its decision, the panel decided that Krause's boastful statements were inadmissible as hearsay to Lubrizol. Id. at 990. Hence, the panel had to "consider whether the complaints and subsequent termination, standing alone, are sufficient to raise a reasonable inference of concerted action." Id. On the same day, a separate panel of this court filed an opinion which reached a result contrary to that in this case. Roesch, Inc. v. Star Cooler Corp., 671 F.2d 1168 (8th Cir.1982). We granted rehearing en banc in both cases. On October 1, 1982, while these cases were under consideration by the court en banc, the President appointed Judge George G. Fagg to succeed Judge Roy L. Stephenson, who assumed senior status on April 1, 1982. Judge Stephenson died on November 5, 1982. Because of the possibility of reaching inconsistent results in Roesch and Battle, the court resubmitted both cases en banc, with Judge Fagg voting on both cases. Thus, both cases were resubmitted to the new en banc court without oral argument.
 
 
 3
 The judgment of the district court in this case is affirmed by an equally divided court upon rehearing en banc. The essential facts in this case are not distinguishable from those in Roesch: a competing distributor complained to the manufacturer but received a neutral response; and later, the manufacturer made a unilateral decision to terminate the plaintiffs. Accordingly, we adopt the reasoning, as applicable to this case, of Judge Ross' opinion in Roesch, Inc. v. Star Cooler Corp., 712 F.2d 1235 (8th Cir.) (en banc), filed today. A manufacturer's termination after receiving complaints cannot be characterized in and of itself as responsive action permitting an inference of concerted action. To do so is to nullify the well-recognized rule that termination following complaints by competitors is not sufficient to allow an inference of concerted action.
 
 
 4
 McMILLIAN, Circuit Judge, dissenting, with whom LAY, Chief Judge, and HEANEY and ARNOLD, Circuit Judges, join.
 
 
 5
 I respectfully dissent. My reasons for dissenting from the court's decision affirming, by an equally divided vote, the judgment of the district court are essentially set forth in my majority opinion for the panel, Battle v. Lubrizol Corp., 673 F.2d 984 (8th Cir.1982). In light of the en banc opinions in this case and its companion case, Roesch, Inc. v. Star Cooler Corp., 712 F.2d 1235, I add the following comments.
 
 
 6
 The essential facts in each case are not distinguishable; however, I disagree with the synopsis set forth in the Battle en banc opinion, at 1240: "a competing distributor complained to the manufacturer but received a neutral response; and later, the manufacturer made a unilateral decision to terminate the plaintiffs." This statement of facts would preclude a finding of an antitrust violation. I would modify the above statement of facts by adding that the distributor's complaints to the manufacturer were price-related and by deleting the reference to the manufacturer's unilateral decision to terminate the distributor. If one assumes that the manufacturer's decision to terminate was unilateral, then such a decision would have been lawful regardless of the manufacturer's concern with price. E.g., United States v. Colgate, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Whether or not the manufacturer did act unilaterally is at issue in these cases. I would therefore rephrase the essential facts as follows: a competing distributor made price-related complaints about another distributor to the manufacturer; later, the manufacturer terminated the plaintiffs.[1]
 
 
 7
 I agree that the mere receipt of complaints, even price-related complaints by a manufacturer, from one or more distributors about the selling practices of another distributor do not "indicate illegal concerted action, [because] it is merely normal marketplace behavior for such complaints to be made." Roesch, at 1238, citing Oreck Corp. v. Whirlpool Corp., 639 F.2d 75, 80 (2d Cir.1980), cert. denied, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981). See Battle v. Lubrizol Corp., 673 F.2d at 991, citing Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., 637 F.2d 105, 111 (3d Cir.1980) (Sweeney ), cert. denied, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981).
 
 
 8
 I also agree, with minor modifications, with the definition of a per se violation set forth in Roesch, at 1237 - 1238: "a per se violation of section one would be established by proof that [the manufacturer] terminated its relationship with [the distributor] at the request of [another] competing [distributor or] distributors and that the termination was in pursuit of a price-related end." See Battle v. Lubrizol Corp., 673 F.2d at 990, citing Contractor Utility Sales Co. v. Certain-Teed Products Corp., 638 F.2d 1061, 1072 & n. 9 (7th Cir.1981), Alloy International Co. v. Hoover-NSK Bearing Co., 635 F.2d 1222, 1224 (7th Cir.1980) (single dealer), and Cernuto, Inc. v. United Cabinet Corp., 595 F.2d 164, 170 (3d Cir.1979) (single dealer). See also Spray-Rite Service Corp. v. Monsanto Co., 684 F.2d 1226, 1234 (7th Cir.1982) (Spray-Rite ), cert. granted, --- U.S. ----, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983).
 
 
 9
 Moreover, I also agree with the statement that "a manufacturer's termination after receiving complaints cannot be characterized in and of itself as responsive action permitting an inference of concerted action." Battle, at 1240; Roesch, at 1237. Merely showing that the manufacturer terminated the distributor following receipt of complaints establishes only a sequential relationship; it does not establish a causal relationship between the two events. The relationship between the complaints and the termination is necessarily sequential because the terminated distributor could not complain if the termination preceded the receipt of complaints by the manufacturer; in that event there could be no causal relationship between the two events at all. However, the inference of concerted action is not based upon the sequential relationship between the complaints and termination but upon the causal relationship between the two events, which is established by showing that the termination was in response to the complaints. Compare Sweeney, 637 F.2d at 116 (distinguishing sequence from consequence), with id. at 124-25 (Sloviter, J., dissenting) (emphasizing that "the mere fact that the manufacturer/supplier took some action will not suffice to establish the requisite combination unless such action were taken in response to such complaints"). Thus, I continue to be of the opinion that "proof of a dealer's complaints to the manufacturer about a competitor dealer's price-cutting, and the manufacturer's action [, that is, the termination of the misbehaving dealer,] in response to such complaints would be sufficient to raise an inference of concerted action." Battle v. Lubrizol Corp., 673 F.2d at 991 (emphasis in original), citing Sweeney, 637 F.2d at 124-25 (Sloviter, J., dissenting); see also Spray-Rite, 684 F.2d at 1239.
 
 
 10
 I would argue that plaintiffs introduced sufficient evidence from which the jury could find that the manufacturer acted in response to the complaints and from that finding draw an inference of concerted action. Admittedly, the evidence of responsive action is circumstantial. However, it is unlikely that plaintiff would have or been able to discover any direct evidence that the manufacturer, in fact, acted in response to the complaints, or that the manufacturer told the complaining distributors that it would do so. That the manufacturer acted in response to the complaints of its distributors in terminating plaintiffs is not the only reasonable inference that can be drawn from the evidence. It would be equally permissible to infer that, as the manufacturer argued, plaintiffs were terminated because they violated their marketing agreement or were dishonest, or that the manufacturer terminated plaintiffs for price-related reasons but decided to do so unilaterally and independently of the complaints. It is a matter for the jury to decide which explanation of the manufacturer's action is more plausible, particularly when the determination depends heavily upon the credibility of the witnesses.
 
 
 
 [1]
 The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri
 
 
 [1]
 This issue is now pending before the Supreme Court in Monsanto Co. v. Spray-Rite Service Corp., 684 F.2d 1226, 1238-39 & n. 7 (7th Cir.1982) (citing the panel opinion in Battle ), cert. granted, --- U.S. ----, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983). One of the questions presented in the petition for certiorari is whether a per se unlawful vertical price-fixing conspiracy can be inferred solely from evidence that the manufacturer, concerned about resale prices, received price complaints from the distributor's competitors and later did not renew the distributor's contract. 51 U.S.L.W. 3627 (Mar. 1, 1983)