| DEFENDANT | DATE SERVED | DATE CONSENT FILED |
|---|---|---|
| 1. Bristol-Myers | February 24 | February 28 (petition) |
| 2. Pfizer | February 24 | February 28 (petition) |
| 3. Dart | February 24 | March 28 |
| 4. Physicians & Hospitals Supply | February 23 | March 25 |
| 5. Mayrand | February 21 | April 4 |
| 6. Glaxo | February 24 | April 1 |
| 7. Rowell | February 23 | April 4 |
| 8. Sharon | February 21 | April 1 |

**Harold V. BROWN, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., et al., Defendants.**

**No. 81–6027–CV–SJ.**

United States District Court, W.D. Missouri, St. Joseph Division.

May 4, 1983.

Supplemental Order July 29, 1983.

lines (TWA). He later joined three additional defendants: (1) International Association of Machinists and Aerospace Workers, (2) District 142 of the Association, and (3) Local Lodge 1650 of the Association. (The latter three defendants will be referred to collectively as the "union.") Plaintiff was terminated on June 26, 1980, pursuant to Article 6(d)(10) of the collective bargaining agreement which provides that "[a]n employee will lose his seniority status and his name will be removed from the seniority list(s) under the following conditions: . . . He is absent three (3) consecutive workdays without notifying the Company, unless satisfactory reason is given." Plaintiff asserts a breach of the union's duty of fair representation, and a breach of the collective bargaining contract by the employer. Plaintiff also contends that the employer colluded with the union during the arbitration process.

Alvin D. Shapiro, and William H. Norton, Norton, Pollard & Norton, Inc., Kansas City, Mo., for plaintiff.

Larry W. Joye, Karl F. Schmidt, Morris J. Nunn, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for Trans World Airlines, Inc.

Michael D. Gordon, Jolly, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for defendant unions.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DIRECTING FURTHER BRIEFING

SACHS, District Judge.

Pending before the Court are defendants' motions for summary judgment. Plaintiff originally filed this action against his former employer, defendant Trans World Air-

### Facts

The union grieved plaintiff's firing through steps two and three of that procedure and the company's decision was affirmed. The union then pursued the complaint through final arbitration, appealing the grievance hearing officer's decision to the System Board of Adjustment. (See 45 U.S.C. § 153). The Board upheld plaintiff's termination. The decision was written by arbitrator Sickles; the TWA representative concurred, and the union representative dissented. The Board found that TWA was "justified in concluding that [Brown] had violated the provisions of Article 6(d)(10) of the agreement between the parties." Board decision at 2.

The only issue at arbitration involved the credibility of plaintiff and two company supervisors. Plaintiff spoke by telephone to Mr. Schultz and Mr. Cummings, the supervisors, on June 16, 1980, although plaintiff did not realize that Mr. Cummings was listening to the conversation. The plaintiff testified at arbitration that he informed Mr. Schultz during that conversation that doctors had advised him that he would be absent from work for 2 to 3 weeks. Both

Schultz and Cummings "categorically denied that [Brown] ever made such a statement." *Id.* at 4. The parties agree that plaintiff did not contact his employer again, and on June 26, 1980, TWA advised Brown that his services had been terminated effective that day, pursuant to Article 6(d)(10) of the contract.

The arbitrator found the testimony of Schultz and Cummings credible, and disagreed with the employee's version of the telephone call. "Not only did Cummings and Schultz deny that the Grievant asserted that he would be out for two or three weeks, but both insisted—and the Grievant conceded—that the Employee was advised to keep the Company advised of his condition." *Id.* at 7. The arbitrator found that "it is conclusively established that the Grievant was fully aware of the 3 day provision . . . ." The arbitrator further stated that the medical documentation presented by plaintiff in an effort to confirm his testimony did not "fully support the contentions of the Employee." *Id.* at 8.

Plaintiff asserts several bases for his unfair representation claim. He argues that the inexperienced union representative relied exclusively on plaintiff's deposition testimony, and failed to produce any additional evidence. Brown contends that the union should have conducted extensive discovery, interviewed Schultz and Cummings, reviewed documents to prepare cross-examination of Schultz and Cummings, made a transcript of the hearing, presented additional evidence of plaintiff's medical condition, and argued that plaintiff had a "satisfactory reason" for any failure to notify his employer.

### Defendant Union's Motion

■ The union seeks summary judgment and contends that even accepting all of plaintiff's assertions as true, there is insufficient evidence of unfair representation. To establish a breach of the duty of fair representation, the plaintiff must demonstrate intentional bad faith, or arbitrary action on the union's part in representing him. *Anderson v. United Transportation*

*Union,* 557 F.2d 165 (8th Cir.1977); *Augspurger v. Brotherhood of Locomotive Engineers,* 510 F.2d 853, 859 (8th Cir.1975). "[S]o long as a union exercises its discretion in good faith and with honesty or purpose, a 'wide range of reasonableness must be allowed.' . . . Mere negligence, poor judgment or ineptitude are insufficient to establish a breach of the duty of fair representation." *Curtis v. United Transportation Union,* 700 F.2d 457, 458 (8th Cir.1983), quoting *NLRB v. American Postal Workers Union,* 618 F.2d 1249, 1255 (8th Cir.1980). "To support a claim that a union acted in a perfunctory manner, there must be evidence that the union acted without concern or solicitude, or gave a claim only cursory attention." *Id.* (citations omitted).

■ A claim for breach of the duty of fair representation may be disposed of by summary judgment motion, even where plaintiff's allegations are that the union acted in a perfunctory manner. *See Barth v. Honeywell, Inc.,* 716 F.2d 907 (8th Cir. 1983). "[T]he party opposing the motion [for summary judgment] may not rest on the allegations in his pleadings, but must resist the motion by setting forth specific facts that raise a genuine issue of fact for trial." *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981) (citations omitted). Plaintiff has alleged in general terms various defects in the union's representation of his claim. However, except for allegations of collusion, plaintiff has in no way suggested that the union's actions were arbitrary or in bad faith, nor has plaintiff presented any facts from which such an inference can be drawn. Even if plaintiff could prove all of his factual assertions at trial, he cannot prevail absent a showing of bad faith or arbitrary and capricious conduct by the union.

Several of plaintiff's contentions relate to matters that were simply not at issue in the termination hearings. Plaintiff's medical condition appears to be irrelevant, because the arbitration determination turned, not on whether his absence was legitimate, but on whether he had properly informed company officials about it. The union and em-

ployer do not contend that TWA was unaware of Brown's hospitalization, or that TWA did not realize the seriousness of plaintiff's medical condition. Defendant employer's statement of facts indicates that the company was well aware of plaintiff's hospitalization. *See* Suggestions in Support of Defendant TWA's Motion for Summary Judgment at 4–5. Rather, the issue throughout the termination proceedings was whether Brown had properly informed his employer on June 16, 1980, that he would be absent from work for the next two to three weeks. Plaintiff consistently maintained that he *had* informed his employer of his extended absence. For the union to contend in the alternative that plaintiff failed to notify his employer for a "satisfactory reason," would have been inconsistent with Brown's version of the telephone call, and could have further damaged plaintiff's credibility. Thus, plaintiff's allegation that the union failed to prove this crucial fact as a result of inadequate discovery is without merit.

■ While plaintiff charges the union with "intentional failure ... to present evidence and legal arguments they knew were material and which would have exonerated plaintiff of the charge," plaintiff fails to elaborate on this contention, or to suggest any possible support for such a finding. Plaintiff's core argument is that the union's representation of his claim was "inadequate." However, as the cases make clear, inadequate, incompetent or negligent representation, even if proved, is not sufficient for plaintiff to prevail. A union representative is not a lawyer, and is not held to the standard of a lawyer. *Curtis, supra,* 700 F.2d at 458. The union in this case took plaintiff's termination all the way through binding arbitration; the union carried plaintiff's claim to the final step, and did not abandon it earlier in the proceedings. *Cf. Minnis v. UAW,* 531 F.2d 850 (8th Cir. 1975).

■ Mistakes in the presentation of arguments do not constitute unfair representation, absent improper motivation on the union's part. *See Ethier v. Postal Service,*

590 F.2d 733 (8th Cir.1979); *Curtis, supra.* Other than the allegations of collusion, plaintiff has set forth no basis for a finding of bad faith, or perfunctory or arbitrary conduct on the union's part. In addition, were plaintiff to demonstrate such bad motive or indifference by the union, he suggests no detriment as a result. Plaintiff has failed to demonstrate the possibility that any of the union's actions affected the result of the arbitration hearing. *See Findley v. Jones Motor Freight,* 639 F.2d 953 (3d Cir.1981).

For example, plaintiff does not demonstrate in what respect the cross-examination could have been improved, or how the two witnesses could have been impeached in their testimony. Plaintiff also fails to suggest how discovery of certain "key documents" would have helped. Plaintiff made no showing that the arbitrator relied on such documents, nor does plaintiff indicate how the documents would have helped to prove his version of the telephone conversation. The arbitrator found that while Schultz and Cummings kept notes, the notes contained no mention of plaintiff's version of the incident. Plaintiff does not allege that such information was deleted from the documents. Instead, plaintiff merely asserts that the documents contained some later insertions. Not only is there no indication that the union breached its duty, there is no evidence that any such breach contributed to the arbitrator's decision. *See Findley, supra.*

The union's failure to order a transcript does not appear to be the result of any bad faith on its part. Rather, it seems to be the union's common practice not to order arbitration transcripts as a method of conserving financial resources. Plaintiff's contention that another union representative might have done a better job is also inapposite. It is not sufficient that the union representative performed poorly, or even was incompetent. Plaintiff has not demonstrated that the union's decision to assign Mr. Poos to his case resulted from any bad faith or malicious motive. In fact, the union offered to let plaintiff's personal lawyer

represent him at the arbitration proceeding. Plaintiff and his counsel chose to utilize Mr. Poos instead.

Plaintiff's assertion that the union failed to present sufficient evidence of "TWA's persistent and repeated attempts" to fire him is also unsound. The arbitrator specifically found that any such actions by the employer were irrelevant to the decision in this case. Thus, any union omission had no effect on the outcome of the arbitration proceeding.

The issues of the fairness of the plaintiff's termination and the correctness of the arbitrator's decision are not before this Court. The only consideration involves the fairness of the union's representation of Brown during the arbitration. The standard for breach of the duty of fair representation is a strict one, and requires a showing of either bad faith or indifference amounting to arbitrary and capricious conduct. Plaintiff has failed to present any facts sufficient to meet this standard, except for general allegations of collusion and "deal-making" between the union and TWA.

### Defendant TWA's Summary Judgment Motion

■ Defendant TWA also seeks summary judgment and contends that there is no basis for employer liability under the facts of this case, even as alleged by plaintiff. The Railway Labor Act (RLA), 45 U.S.C. §§ 151 et seq., governs labor disputes between the airline and its employees. The RLA provides for binding arbitration of minor contract disputes, including wrongful discharge claims. 45 U.S.C. § 153. As noted above, plaintiff utilized this remedy, and the arbitration board found for the employer. The RLA provides that the Board's decision may be set aside only for "failure ... to comply with the requirements of" the statute, "failure of the [Board's] order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member ...." 45 U.S.C. § 153, First (g). Thus, the scope of judicial review is very narrow. Plaintiff asserts neither a failure to follow procedures nor any action outside the scope of the Board's jurisdiction. While plaintiff does contend that the Board's TWA representative participated in the company's earlier termination decision, this does not comprise the necessary fraud or corruption. The plaintiff is not entitled to a neutral individual as the company representative on the arbitration board. See, e.g. Arnold v. United Air Lines, Inc., 296 F.2d 191 (7th Cir.1961); Stanton v. Delta Air Lines, Inc., 669 F.2d 833 (1st Cir.1982).

■ The Supreme Court has held that federal courts may also exercise jurisdiction over both the union and the employer in certain RLA discharge cases where the plaintiff alleges a breach of the duty of fair representation. Glover v. St. Louis-San Francisco Railway Company, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). It is clear that both the union and the employer are liable where the plaintiff demonstrates unfair representation by the union and collusion or participation in the union's actions by the employer. See Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). It is less clear, however, whether an action can be maintained against the employer absent colorable allegations of collusion or participation in the union's activities. See Hines v. Anchor Motor Freight, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), where the Court held that an employee may challenge the finality of an arbitrator's decision on the basis of breach of the duty of fair representation without alleging employer collusion, in a case involving the Labor Management Relations Act. See also Curtis v. United Transportation Union, 486 F.Supp. 966 (E.D.Ark.1980), rev'd. on other grounds, 648 F.2d 492 (8th Cir.1981), where the Court held that the Hines rationale applied to cases brought under the RLA. Compare Barney v. National Airlines, Inc., 538 F.Supp. 357 (S.D. Fla.1982), where the Court disagreed with Judge Eisele's reasoning in the Curtis case. See also Raus v. Brotherhood Railway Carmen, 663 F.2d 791 (8th Cir.1981), where the Court held that a district court lacks juris-

diction over the employer absent exhaustion of administrative remedies, where plaintiff alleges no collusion on futility.

■ Where the Court rules as a matter of law, however, that no breach of the duty of fair representation occurred, there is no basis for exercising jurisdiction over the employer. If the union is not a party-defendant, it is clear that the employer cannot be held liable and the finality of the arbitration decision cannot be challenged. *See, e.g. Franklin v. Southern Pacific Transportation Company,* 593 F.2d 899 (9th Cir. 1979); *Riddle v. Trans World Airlines, Inc.,* 512 F.Supp. 75 (W.D.Mo.1981).

■ Thus, the only remaining issue which prevents the Court from granting summary judgment involves plaintiff's collusion assertions. While it appears unlikely that plaintiff can substantiate his general charges of employer-union collusion, (*See, e.g.* Plaintiff's Answers to Interrogatories) the defendants have submitted no factual support for their denial. Summary judgment cannot be granted merely on the defendants' bald denial of plaintiff's assertions, absent affidavits or other rebuttal evidence. *See White v. Walsh,* 649 F.2d 560, 562–63 (8th Cir.1981), where the Court held that affidavits in support of a motion for summary judgment were required where the complaint alleged conspiracy. It appears that an allegation of collusion is sufficiently similar to a conspiracy claim that the same showing would be necessary. Because it "is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement," the Court held that the "complainant may or may not be in a position to allege with precision the specific facts giving rise to the claim." *Id.* at 561. Thus, the Court reasoned that it was error to dismiss the complaint absent a proper showing accompanying defendant's motion for summary judgment.

For the reasons discussed above, it is hereby

ORDERED that defendants' motions for summary judgment are granted in part, and denied in part. The motions are granted as to all claims of breach of the duty of fair representation and breach of contract except as such claims involve allegations of collusion by the defendants. Absent further briefing or evidence presented to the Court, plaintiff's allegations of collusion remain for trial. It is further

ORDERED that any additional briefing and supporting affidavits on the collusion issue shall be filed on or before June 17, 1983.

## SUPPLEMENTAL ORDER

Further consideration of this case, based on the briefs of the parties, the materials in the file that have been called to the Court's attention, oral argument of counsel, and some additional research, reaffirms the view expressed in the ruling of May 24, 1983. In that order, the Court granted partial summary judgment for defendants on what may be characterized as plaintiff's "malpractice" claim against his former union. The May 24 ruling adequately analyzes the issues presented and only brief additional commentary will be made.

With respect to the claim of unfair union representation in processing and presenting plaintiff's arbitration claim, the question is not one of simple negligence, an issue generally reserved for jury disposition. Rather, a higher level of proof is required. In the Seventh Circuit, for example, it was recently said that even gross negligence at a grievance hearing would not violate the duty of fair representation. *Dober v. Roadway Express, Inc.,* 707 F.2d 292 (7th Cir. 1983). A showing of "inept, lackluster (and) careless" conduct may, not suffice to survive a summary judgment motion. *Ibid.* The case law is divided as to the exact standard to be used, but even on the most generous standard, plaintiff must be able to show what may be characterized as gross neglect, perfunctory conduct, or egregious or reckless disregard for the rights of the employee. *Ibid.,* concurring opinion of Judge Cudahy. Judge Cudahy's views appear to be close to the Eighth Circuit formulation, set forth in prior citations.

■ The most serious charge in this case relates to inadequate pre-hearing preparation, in particular, the union's failure to interview two employer witnesses prior to the hearing. At worst, however, this may be characterized as simple negligence, and not as gross neglect. The Court finds very little precedent for basing a claim of *attorney* malpractice on such omissions, and plaintiff is not entitled to demand assistance as skillful and meticulous as that of an attorney. The Court located one case in which failure to investigate or depose adverse witnesses was an element in a malpractice claim. *Basic Food Industries, Inc. v. Grant,* 107 Mich.App. 685, 310 N.W.2d 26 (1981). Compare *Woodruff v. Tomlin,* 616 F.2d 924 (6th Cir.1980), where a divided court ruled that failure to interview possible *favorable* witnesses might suffice to make a submissible malpractice case. Considering the thousands of instances in which an unsuccessful litigant might claim neglect of his case by an attorney failing to interview or depose adverse witnesses, a close case of submissibility might be posed by the omissions here alleged if the standard were simple negligence.

Failure of criminal defense counsel to interview witnesses is a frequent issue in habeas corpus litigation, but the courts are there dealing with highly protected constitutional rights and generally with defective searches for potentially favorable evidence rather than efforts to develop the most effective impeachment by pretrial work with adverse witnesses. Moreover, a substantial showing of prejudice is needed to earn a new trial (*McQueen v. Swenson,* 498 F.2d 207 (8th Cir.1974)) or a verdict for damages (*Basic Food Industries, supra*). In the instant case, however, the alleged negligence is not shown to have made a difference between plaintiff's winning or losing his arbitration case.[*]

The Court seeks to apply the rule that there must be a "minimal level of integrity in the arbitration process" but does not believe plaintiff is able to demonstrate, from the record here presented, that gross neglect of his case occurred in this instance. Lacking such a showing, the Court would ultimately be required to rule for defendants as a matter of law. That being so, summary judgment on the "malpractice" claim is mandated. *Roberts v. Browning,* 610 F.2d 528, 532 (8th Cir.1979); *Lundeen v. Cordner,* 354 F.2d 401 (8th Cir.1966). Material facts are not in dispute. Plaintiff seeks to hold the union to a higher standard of performance than is imposed by the cases.[**]

■ In the earlier order granting partial summary judgment, the Court reserved its ruling on plaintiff's allegations of collusion between the defendants, and directed further briefing on that issue. Turning now to plaintiff's claim of collusion or conspiracy, Eighth Circuit precedents require that summary judgment be granted rather than submit to the jury unsupported suspicion. Plaintiff's counsel agrees with the Court that a case most nearly in point is *White v. Walsh,* 649 F.2d 560 (8th Cir.1981), where the Court of Appeals reversed a dismissal of a prisoner's conspiracy complaint. The *White* court did not suggest, however, that "a full trial on the merits is necessary." On the contrary, the court volunteered that

---

[*] The Court is aware that in *Thompson v. Machinists,* 258 F.Supp. 235 (E.D.Va.1966) the court ruled that absence of a transcript precluded a lack of prejudice argument. In the present case, however, unlike *Thompson,* plaintiff was himself a witness to the arbitration proceedings, although he did not attend the Step 3 grievance hearing. Moreover, plaintiff has failed to articulate just what could have been accomplished in an interview of these particular witnesses. This supports the conclusion that there was no gross error in failing to pursue such pre-hearing discovery. Hindsight has not greatly improved on foresight.

[**] The *Hines* case, on which plaintiff most seriously relies (424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)) is readily distinguishable. In that case, among other distinctions, disloyalty by the union was shown, and the union's inadequate preparation clearly caused the arbitral miscarriage. *Hines* is certainly no precedent for relitigating numerous arbitration decisions. If plaintiff were to prevail here, however, whenever a lawyer thinks he could have done a better job than the union advocate, he would have a fair shot at trying to convince a jury of that fact.

affidavits might allow the case to be ruled on summary judgment. *Ibid.* Thus, a party may not insist on trial to test unsupported suspicion, where there is a denial under oath, and no remaining circumstantial evidence of a quality which would make a submissible case. Mere desire for a trial, accompanied by an assertion that credibility issues could be raised, does not suffice under current practice to get a party past a motion for summary judgment. *See Matter of Citizens Loan & Sav. Co.,* 621 F.2d 911, 913 (8th Cir.1980) where a sworn denial of critical knowledge was deemed dispositive, in the absence of "some basis or ground" specified by the party resisting summary judgment for its assertion that credibility issues were present which should go to the jury.

Even where the sketchy beginning of a circumstantial case appeared in the record, four members of the Court of Appeals recently sustained a summary judgment ruling for defendant on an antitrust conspiracy or collusion claim. *Battle v. Watson,* 712 F.2d 1238 (8th Cir. en banc, 1983). A close comparison of the record in *Battle* with that in the present case would serve little purpose; it is sufficient to offer the conclusion that if summary judgment was authorized on the concerted action issue in that case it would more clearly be authorized here.

The only matter submitted by plaintiff in support of his collusion or "trade off" theory, is his deposition testimony (not shown to have evidentiary quality) that the union won a series of grievances after losing this arbitration. If this happened (giving plaintiff the benefit of the evidentiary doubt) plaintiff makes no effort to show that such a fact would permit a jury to infer serious misconduct by way of collusion, particularly in light of the present record in which there is ample sworn testimony to the contrary, and no basis for inferring union hostility toward plaintiff. While not dispositive, the showing that the union rejected use of the arbitrator in later cases indicates an unusually strong level of support for plaintiff's position.

The Court recognizes that a summary judgment is strong medicine. Putting a case like this "out of its misery" is believed mandated, however, by current practice.

Before addressing plaintiff's request for certification of an interlocutory appeal, the Court takes note of the rhubarb concerning the plans of a judicial law clerk to become an associate in the Kansas City law firm of Stinson, Mag & Fizzell in September of this year. The Stinson, Mag law firm frequently (but not in this case) represents the defendant employer, a major client of the office. Because Ms. O'Connell was a summer clerk in that law firm, and may work in the future on TWA matters, plaintiff insists there is an ethical question, an "appearance of impropriety," in her assignment to work on this matter. If Stinson, Mag were counsel in this case, the point would of course be well taken, under current practice in this Court. But in the absence of any real linkage to the law firm in this case, or to one of the parties, the Court stands by the preliminary comments made in a memorandum to counsel filed June 23, 1983.

It is true that appearances must be observed, but only when reasonable doubts might be raised. The Court cannot avoid irresponsible gossip or exaggerated suspicions. Although the Court specifically requested authorities supporting plaintiff's objection, nothing in point has been supplied. The Court's own research discloses a remote logical analogy in Advisory Opinion No. 11, issued by the Federal Interim Advisory Committee on Judicial Activities. Where a lawyer is a "very close friend" who is "almost a part of the family," a judge is advised to recuse in matters in which the friend is an advocate, but is generally advised to sit when other members of the firm are advocates. The possibility that Ms. O'Connell was influenced by the likelihood that she may some day work on TWA matters for Stinson, Mag is at least as remote as the possibility that a judge might be influenced by a very close friendship with a member of a law firm which is counsel in a pending case.

In any event, independent reconsideration has been given to this matter and Ms. O'Connell had a very limited role in preparing the current opinion.

■ On the remaining issue of further proceedings in this action, the parties agree that certification of an interlocutory appeal is appropriate. The granting of summary judgment to defendants resolves the major controversy, although defendant TWA has an unrelated counterclaim which may not be litigated if the major ruling made here is affirmed. Separate litigation of the counterclaim would be wasteful of everyone's time, and none of the parties wishes to go to trial on the counterclaim at this point. Thus, this Court concludes that certification of an interlocutory appeal is appropriate. The summary judgment ruling involves a controlling question of law upon which there is a not insubstantial ground for disagreement, and it is probable that an immediate appeal at this time will "materially advance the ultimate termination of the litigation."

It is therefore ORDERED as follows:

(1) The trial setting for August 29, 1983, is cancelled;

(2) Judgment shall be entered in favor of defendants and against plaintiff on all of plaintiff's claims;

(3) The Court certifies its summary judgment rulings for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b); and

(4) Further proceedings in this action are stayed pending further order of the Court.