**ORECK CORPORATION,**
**Plaintiff–Appellant,**

v.

**WHIRLPOOL CORPORATION and**
**Sears Roebuck and Co.,**
**Defendants–Appellees.**

**No. 6, Docket 79–7791.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 4, 1980.

Decided Nov. 5, 1980.

Rehearing and Rehearing In Banc
Denied May 13, 1981.

Howard Adler, Jr., Washington, D. C. (James W. Olson, Michael D. Ridberg, Ronald W. Kleinman, and Bergson, Borkland, Margolis & Adler, Washington, D. C., and Mervin Rosenman, New York City, on the brief), for plaintiff–appellant Oreck Corp.

Michael R. Turoff, Chicago, Ill. (Stanley M. Lipnick, Patrick F. Geary, and Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., on the brief), for defendant–appellee Whirlpool Corp.

Gerald D. Fischer, New York City (Lefrak, Fischer, Myerson & Mandell, New York City, on the brief), for defendant–appellee Sears, Roebuck and Co.

Before TIMBERS, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

TIMBERS, Circuit Judge:

This action was commenced by appellant, Oreck Corporation, in September 1972. Following a jury trial, judgment was entered in July 1976 against appellees, Whirlpool Corporation and Sears, Roebuck and Co., and in favor of appellant on two counts of a seven count complaint charging violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). On appeal, a divided panel of this Court reversed and remanded the case for a new trial. 563 F.2d 54 (2 Cir. 1977). On rehearing en banc, we adhered to the decision of the panel majority and remanded the case for a new trial. 579 F.2d 126 (2 Cir.), *cert. denied*, 439 U.S. 946 (1978).

At the close of appellant's case at the trial on remand, the district court, Richard Owen, *District Judge*, granted appellees' motion for a directed verdict. From the judgment entered thereon, appellant has appealed. We affirm on the ground that there was insufficient evidence to establish a conspiracy in restraint of trade.

## I.

## FACTS

We assume familiarity with the comprehensive statements of the facts underlying this dispute as set forth in the late Judge Anderson's panel and en banc opinions referred to above.

Since 1957 Whirlpool has manufactured vacuum cleaners for Sears. The latter has sold them under Sears' "Kenmore" label. Whirlpool also has tried, unsuccessfully, to sell its vacuum cleaners under its own name. From 1963 until 1971 Oreck was the exclusive distributor of vacuum cleaners under the "Whirlpool" trade name.

On December 31, 1971 Whirlpool allowed Oreck's exclusive distributorship to expire according to its terms and refused to extend it. Oreck commenced the instant ac-

tion in September 1972 claiming that Whirlpool's refusal to renew the sales agreement resulted from an illegal contract, combination or conspiracy between Whirlpool and Sears unreasonably to restrain trade by excluding Oreck from the vacuum cleaner market in the United States and Canada.[1] More specifically, Oreck alleged that its distributorship was terminated by Whirlpool at the insistence of Sears, a much larger purchaser of Whirlpool products.

Appellees contended by way of defense that Whirlpool refused to renew Oreck's contract because of Oreck's failure to follow Whirlpool's marketing strategy for its vacuum cleaners. According to testimony adduced at the first trial, as Judge Anderson pointed out in our earlier en banc opinion, Whirlpool intended to market its name brand vacuum cleaners in retail department stores, but Oreck's campaign focused increasingly on janitorial supply houses and mail order sales. 579 F.2d at 128.

Appellees further contended that Sears never considered Oreck a competitive threat. Indeed, despite Oreck's claim that it sold vacuum cleaners at "one-half the retail price," there was no evidence that it ever undercut Sears on the price of vacuum cleaners.

## II.

## THE LEGAL STANDARD

A plaintiff in a civil action, in order to sustain its claim under Section 1 of the Sherman Act, must establish two elements: first, that the defendants entered into a "contract, combination ... or conspiracy"; and, second, that it was "in restraint of trade or commerce among the several states." 15 U.S.C. § 1 (1976); *House of Materials, Inc. v. Simplicity Pattern Co.*, 298 F.2d 867, 870 (2 Cir. 1962); *DuPont Glore Forgan Inc. v. Am. Tel. & Tel. Co.*, 437 F.Supp. 1104, 1111 (S.D.N.Y. 1977), *aff'd*, 578 F.2d 1367 (2 Cir. 1978). We

---

1. During the trial on remand Oreck withdrew the count regarding Canadian sales. This appeal therefore is concerned only with Oreck's claim of a conspiracy to exclude it from the United States markets.

In the interest of simplicity, we use the statutory term "conspiracy" in this opinion. Our holding that there was insufficient evidence of a "conspiracy" applies with equal force to the statutory terms "contract" and "combination".

hold that Oreck did not sustain at trial its burden of proving a conspiracy between Whirlpool and Sears. We therefore affirm the judgment of the district court entered on its directed verdict for appellees.[2]

■ It is elemental that Whirlpool's termination of its distributorship contract with Oreck cannot be held to have violated the Sherman Act unless it stemmed from "a contract, combination or conspiracy" between Whirlpool and Sears. *FLM Collision Parts Inc. v. Ford Motor Co.*, 543 F.2d 1019, 1029 (2 Cir. 1976), *cert. denied*, 429 U.S. 1097 (1977). It is not necessary that such a combination be established by direct proof of oral or written agreements; it may be proven by inferences drawn from circumstantial evidence, including the acts and conduct of the alleged conspirators. *Norfolk Monument Co., Inc. v. Woodlawn Memorial Gardens, Inc.*, 394 U.S. 700, 704 (1969). A mere showing of close relations or frequent meetings between the alleged conspirators, however, will not sustain a plaintiff's burden absent evidence which would permit the inference that those close ties led to an illegal agreement. *Miller v. New York Produce Exchange*, 550 F.2d 762, 767 (2 Cir. 1976), *cert. denied*, 434 U.S. 823 (1977); *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9 Cir. 1976), *cert. denied*, 429 U.S. 1073 (1977); *Venzie Corp. v. United States Mineral Products Co., Inc.*, 521 F.2d 1309, 1312–13 (3 Cir. 1975).

■ In the instant case Oreck cannot be said to have sustained its burden by merely establishing that Sears was an important customer with close ties to its supplier, Whirlpool, or even by showing that Sears had substantial economic muscle to enable it to force Whirlpool to terminate its relationship with Oreck. Upon the facts of this case, it was necessary for Oreck to establish that Sears used that relationship or its power to prod Whirlpool into ending the Oreck distributorship.

## III.

## ORECK'S EVIDENCE IN THE DISTRICT COURT

Much of the circumstantial evidence adduced by Oreck focused on the substantial economic ties between the alleged conspirators. Since 1958 Sears has been Whirlpool's largest customer for vacuum cleaners and other appliances. Between 1962 and 1972 Sears owned between 3% and 4½% of Whirlpool's outstanding common stock. Sears' subsidiary, Allstate Insurance Co., owned between 8/10 of 1% and 2½% of the outstanding Whirlpool stock. Sears' officers have served on Whirlpool's board of directors. Sears held title to the tools which Whirlpool used to manufacture its vacuum cleaners. It did so pursuant to an agreement under which the cost of the tools, although initially paid for by Whirlpool, was amortized over a number of units as produced; and in this way Sears ultimately reimbursed Whirlpool for the cost of the tools. This gave Sears control over the use of the tools and the power to determine for whom Whirlpool could manufacture vacuum cleaners.

There was little evidence, either direct or circumstantial, that Sears actually exercised any of this economic muscle in the manner claimed by Oreck. While Sears' ownership of the tools used to manufacture Oreck's products gave Sears a direct means of cutting off Oreck's supply of vacuum cleaners, the evidence showed that Sears authorized Whirlpool's use of the tools to manufacture vacuum cleaners for Oreck and never rescinded that authorization, although Sears did receive royalties on Oreck's sales.

■ It is argued that the existence of a conspiracy might be inferred from actions taken by Whirlpool which were inconsistent with its economic self–interest. Oreck, however, has failed to establish that Whirlpool took any action which did not comport with its legitimate commercial objectives.

---

2. The previous opinions of this Court in this case did not reach the question of the sufficiency of the evidence of a conspiracy.

Oreck has attempted to make much of Whirlpool's refusal to sell Oreck its inventory of vacuum cleaners after the termination of its distributorship. The record shows, however, that after December 1971, when the distributorship was terminated, Oreck owed Whirlpool over $220,000. Whirlpool was forced to sue to collect this indebtedness. Under these circumstances, Whirlpool's refusal to sell after the termination of the distributorship can hardly be said to be contrary to Whirlpool's economic self–interest.

Oreck did show that Sears executives had forwarded to Whirlpool copies of direct mail advertising used by Oreck to sell Whirlpool vacuum cleaners with indications that Sears considered the advertising improper. In 1971, the final year of the distributorship, Oreck mailed over 20 million pieces of advertising to consumers, among whom were Sears employees. This advertising contained certain allegedly false and misleading statements, including a statement that Whirlpool vacuum cleaners were being offered at half–price. These statements were the subject of complaints from other sources, including the Better Business Bureau.

■■■ That Sears brought these improper selling methods to Whirlpool's attention hardly rises to the level of evidence of a conspiracy unlawfully to exclude Oreck from the vacuum cleaner market. Sears argues that as a Whirlpool stockholder it had a legitimate business interest in advising Whirlpool of substandard advertising campaigns which Sears thought reflected poorly on Whirlpool's image with consumers. Moreover, even if Sears' actions were to be viewed as a complaint by one Whirlpool customer about the selling practices of another, such a complaint would not indicate illegal concerted action, since it is merely normal marketplace behavior for such complaints to be made. *Carbon Steel Products Corp. v. Alan Wood Steel Co.*, 289 F.Supp. 584, 588 (S.D.N.Y.1968).

■■■ This evidence at most showed that Sears was unhappy with Oreck's selling practices. Oreck urges, however, that Sears, as an important customer and stockholder of Whirlpool, had some economic power which it might have been able to use to compel Whirlpool's refusal to renew Oreck's exclusive distributorship. Based upon the evidence referred to above, any implication that Sears in fact used its leverage in a manner which indicated a conspiracy must rest upon sheer speculation insufficient to support a conclusion that Whirlpool and Sears engaged in an illegal "contract, combination . . . or conspiracy." *Miller v. New York Produce Exchange, supra,* 550 F.2d at 767.

The closest Oreck came to proving a conspiracy between Whirlpool and Sears was the testimony of David Oreck and Marshall Oreck, officers of appellant. They testified that on three occasions between 1967 and 1971 John Payne, the Whirlpool salesman responsible for the Oreck account, told them that Sears disapproved of Oreck's selling tactics and implied that Oreck, by antagonizing Sears, was jeopardizing its continued relationship with Whirlpool.

■■■ Payne's out–of–court statements of course were hearsay. Fed.R.Evid. 801(c). Hearsay statements of a purported conspirator are not admissible against a co–defendant unless there is independent, non–hearsay evidence that establishes the declarant's participation in the conspiracy. *Schine Chain Theatres, Inc. v. United States,* 334 U.S. 110, 116–17 (1948); *United States v. Provenzano,* 615 F.2d 37, 44 (2 Cir. 1980); *United States v. Geaney,* 417 F.2d 1116 (2 Cir. 1969), *cert. denied,* 397 U.S. 1028 (1970). The mere showing of a close association between defendants is not sufficient to satisfy the independent proof requirement. *United States v. Ragland,* 375 F.2d 471, 477 (2 Cir. 1967), *cert. denied,* 390 U.S. 925 (1968). Accordingly, even if Payne's statements were to be considered as admissions of Whirlpool as a party defendant, Fed.R.Evid. 802(d)(2)(D),[3] in view

---

**3.** Whirlpool and Sears argue, with some force, that Payne's statements should not have been

admitted even against Whirlpool under the hearsay exception for admissions because

of the complete lack of independent evidence of a conspiracy involving Sears, we hold that testimony regarding those statements should not have been admitted.[4]

Even if the Payne statements had been properly admitted, the sufficiency of Oreck's evidence of conspiracy would have been doubtful at best. Absent the Payne statements, clearly the evidence was insufficient to establish a contract, combination or conspiracy between Whirlpool and Sears.[5]

We hold that Oreck failed to establish its claims under Section 1 of the Sherman Act.

### IV.

### DENIAL OF ORECK'S MOTION TO AMEND ITS COMPLAINT

Oreck also contends that the district court erred in denying its motion to amend its complaint prior to the trial on remand to include claims of tortious interference with its business relations.

The denial of such a motion is within the sound discretion of the district court. *Zenith Radio Corp. v. Hazeltone Research, Inc.*, 401 U.S. 321, 330 (1971). Oreck

had failed to assert these claims in the federal court at any time since the action was commenced in 1972. Although it did raise these claims in a related state court action, it apparently made a tactical decision to proceed only on its antitrust claims in the federal court. Under these circumstances of extended delay and failure to raise initially claims of which Oreck was well aware, we hold that denial of leave to amend was not an abuse of discretion. *Troxel Manufacturing Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6 Cir. 1973), *cert. denied*, 416 U.S. 939 (1974).

In view of our essential holding that there was insufficient evidence of a conspiracy, we find it neither necessary nor appropriate to reach the other claims raised on appeal.

Affirmed.

---

questions of Whirlpool policy were beyond the scope of Payne's employment as a salesman. Fed.R.Evid.801(d)(2)(D); *Flintkote Co. v. Lysfjord*, 246 F.2d 368 (9 Cir.), *cert. denied*, 355 U.S. 835 (1957); and on the further ground that Oreck failed to lay a proper foundation to show the source of Payne's knowledge. *Northern Oil Co., Inc. v. Socony Mobil Oil Co., Inc.*, 347 F.2d 81 (2 Cir. 1965). In view of our holding that independent evidence of a conspiracy was insufficient to warrant the admission of the Payne statements, we find it unnecessary to determine the relationships between Payne, his employer and Oreck. Suffice it to say that, in view of Oreck's failure to establish whether Payne's statements were based on rumor, innuendo, or his own conclusions about Sears' interests, we would regard the Payne statements, even if admissible, as having little probative value.

4. We note that the district court, in receiving the Payne statements, characterized as "scanty" the independent evidence of a conspiracy involving Sears. We think that characterization was overly generous.

5. We reject summarily Oreck's evidentiary claims as being without merit.

The only one worthy of brief mention is its claim that the district court erred in refusing to admit parts of a memorandum purporting to include the conclusions of an Oreck employee about a conversation he was said to have had with Whirlpool in 1966. The witness whose conclusions allegedly were recorded could not verify the authenticity of the memorandum beyond acknowledging that it was the "type" sometimes prepared from his recollections. He could not recall the factual basis for his conclusions. In view of the unavailability of cross-examination on the accuracy of the observations, their factual basis, *Monroe v. Board of Educ.*, 65 F.R.D. 641 (D.Conn.1975), or the accuracy of transcription, *United States v. Judon*, 567 F.2d 1289, 1294 (5 Cir. 1974), we decline to hold that the district court erred in excluding the memorandum.

Moreover, as Oreck's counsel stated at trial, the recorded recollection of an Oreck employee about a conversation with Whirlpool was not probative on the question of a conspiracy between Whirlpool and Sears.