**LANTEC, INC., a Utah Corporation, Lancompany Informatica Ltda., a Brazil corporation, Plaintiffs,**

v.

**NOVELL, INC., a Delaware corporation, Defendant,**

No. 2:95CV97–ST.

United States District Court, D. Utah, Central Division.

April 9, 2001.

Stanford B. Owen, P. Bruce Badger, Fabian & Clendenin, Salt Lake City, UT, Evan A Schmutz, Hill Johnson & Schmutz LC, Provo, UT, for Lantec, Inc., Lancompany Informatica Ltda., Lantex Informatica Ltda. Lantraining Informatica Ltda. plaintiffs.

Stanley J. Preston, R. Brent Stephens, Rodney R. Parker, Ryan E. Tibbitts, Max D. Wheeler, Maralyn M. Reger, Snow Christensen & Martineau, Stephen J. Hill, Salt Lake City, UT, for Novell, Inc., a Delaware corporation, defendants.

## DECISION AND ORDER GRANTING DEFENDANT'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW AND DENYING MOTION TO ALTER OR AMEND ORDER EXCLUDING EXPERT TESTIMONY

STEWART, District Judge.

This matter came before the court on February 14, 2001, for hearing on Defendant Novell's Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50.

At the close of Plaintiffs' evidence Defendant moved for judgment as a matter of law. The court excused the jury for a day to hear the Rule 50 motion. At the close of the hearing, the court announced it would rule in favor of Defendant and would proceed to the next phase of the trial—Defendant's counterclaim against counterclaim defendant LanCompany. The parties stipulated to the withdrawing of the jury demand for the counterclaim portion of the trial and requested the court hear the counterclaim as a bench trial at a later date. Accordingly, the court dismissed the jury. This order sets forth the reasons the court granted Defendant's Motion for Judgment as a Matter of Law.

### I. Standard for Judgment as a Matter of Law

Federal Rule Civil Procedure 50(a) provides,

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgement as a matter of law against that party....

*Id.*

Motions under Rule 50 must "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed.R.Civ.P. 50(a)(2).

Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. Rule Civ. Proc. 50(a); *see also Weisgram v.*

*Marley Co.,* 528 U.S. 440, 120 S.Ct. 1011, 1016–1018, 145 L.Ed.2d 958 (2000).

\*   \*   \*   \*   \*   \*

[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.

In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554–555[, 110 S.Ct. 1331, 108 L.Ed.2d 504] (1990); [*Anderson v.*] *Liberty Lobby, Inc.,* [477 U.S. 242,] *supra,* at 254, 106 S.Ct. 2505[, 91 L.Ed.2d 202]; *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, n. 6[, 82 S.Ct. 1404, 8 L.Ed.2d 777] (1962). *"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Liberty Lobby, supra,* at 255, [106 S.Ct. 2505] 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *See* Wright & Miller 299. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.,* at 300[, 106 S.Ct. 2505].

*Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (underlined emphasis added).

Thus, unless the evidence so overwhelmingly favors "the movant as to permit no other rational conclusion, judgment as a matter of law is improper." *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 557 (10th Cir.1996). In challenging the sufficiency of the evidence in this context, Defendant must establish that no reasonable person could find the essential elements of the antitrust claims.

## II.  Contentions of the Parties

Defendant generally contends Plaintiffs lack standing to bring their antitrust claims because they have not properly defined a relevant market; the evidence does not establish they have suffered an antitrust injury; and, the evidence does not show a conspiracy or agreement with a separate and distinct entity to monopolize or restrain trade. In addition, Defendant contends that Plaintiffs' evidence fails to establish the other elements of each of the five federal antitrust claims and the two state antitrust claims.

Plaintiffs contend their evidence is sufficient to have the issues decided by the jury. Plaintiffs' position is made more difficult by the court's ruling excluding the testimony of their expert, Dr. John C. Beyer, for failure to meet the *Daubert/Kuhmo* standards for admissibility. Dr. Beyer's excluded testimony covered such key issues as the relevant market, market power, power to control prices and probability of success of monopolization. Nonetheless, Plaintiffs contend that, even without Dr. Beyer's testimony, the totality of the evidence at trial provides a sufficient basis from which a reasonable jury could find in their favor on each of their antitrust claims.

## III.  The Antitrust Claims

The jury heard evidence on Plaintiffs' five federal antitrust claims. The parties agree that the state law antitrust claims are duplicative of federal antitrust claims and therefore stipulated before trial that the state law antitrust claims not be included in the jury instructions or verdict form. Pretrial Order at 57.

Plaintiffs' First Claim for Relief alleges Defendant's acquisition of WordPerfect in 1994, was an unlawful vertical merger in violation of section 7 of the Clayton Act, 15 U.S.C. § 18, because the merger substantially lessened competition or tended to create a monopoly in the GroupWare for NetWare market.[1] The merger was announced on March 21, 1994, and completed by June 24, 1994.

> [S]ection 7 of the Clayton Act requires a Court to assess the likely competitive effect of a vertical merger in specific product and geographic markets. To prove its case, a plaintiff must make a greater showing then simply that a vertical merger will result in a significant percentage of market foreclosure.... [A] plaintiff must demonstrate, in addition, some probable anticompetitive effect or impact. See 15 U.S.C. § 18; *see also United States v. Marine Bancorporation,* 418 U.S. 602, 623 n. 22[, 94 S.Ct. 2856, 41 L.Ed.2d 978] (1974) ("loss of competition").

*Crouse–Hinds Co. v. InterNorth, Inc.,* 518 F.Supp. 416, 431 (N.D.N.Y.1980).

> Although no precise formula exists for determining whether a vertical merger may lessen competition, the traditional analysis involves an examination of certain market factors, which are applied to the merger at hand. *Brown Shoe,* 370 U.S. at 328–33[, 82 S.Ct. 1502]. Those factors include: the nature and economic purpose of the arrangement; the likelihood and size of any market foreclosure; the extent of concentration of sellers and buyers in the industry; the capital cost required to enter the market; the market share needed by a buyer or seller to achieve a profitable level of production or "scale economy"; the existence of a trend toward vertical

concentration or oligopoly in the industry; and whether the merger will eliminate potential competition by one of the merging parties. *Brown Shoe,* 370 U.S. at 328–33[, 82 S.Ct. 1502].

*HTI Health Services, Inc. v. Quorum Health Group, Inc.,* 960 F.Supp. 1104, 1135 (S.D.Miss.1997).

> *Determination of the relevant market is a necessary predicate to a finding of a violation of the Act* because the threatened monopoly must be one which will substantially lessen competition within the area of effective competition. Substantiality can be determined only in terms of the market affected.

*United States v. E.I. du Pont de Nemours & Co.,* 353 U.S. 586, 593, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957) (footnote citation omitted) (underlined emphasis added). Without a well-defined relevant market, an examination of a transaction's competitive effects is without context or meaning.

Vertical mergers are not illegal *per se,* nor are they a suspect category under antitrust laws. *Reazin v. Blue Cross Blue Shield of Kansas,* 663 F.Supp. 1360, 1489 (D.Kan.1987) *aff'd* 899 F.2d 951 (10th Cir. 1990).

Plaintiffs' Second Claim for Relief alleges Defendant and WordPerfect contracted, combined and conspired to unreasonably restrain trade and commerce in the GroupWare for NetWare market in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

> [T]o state a claim for a Sherman Act § 1 violation, "the plaintiff must allege facts which show: the defendant entered a contract, combination or conspiracy that unreasonably restrains trade *in the relevant market."*

1. Originally described in the First Amended Complaint, ¶ 148–49, as the "NetWare Messaging Applications market," Plaintiffs subsequently refined their claimed relevant market as the "GroupWare for NetWare" market.

*Full Draw Productions v. Easton Sports, Inc.,* 182 F.3d 745, 755 (10th Cir.1999) (underlined emphasis added quoting *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1027 (10th Cir.1992)). *See also SCFC ILC, Inc. v. Sears, Roebuck and Company,* 36 F.3d 958, 965–66 (10th Cir.1994) (two step analysis for section 2 claims "equally helpful" to claims under section 1.)

Pursuant to *International Travel Arrangers v. NWA, Inc.,* 991 F.2d 1389, 1397–98 (8th Cir.1993), if Defendant and WordPerfect maintained independent economic consciousness after they decided to merge but before the merger was complete they could conspire. If they did not maintain economic consciousness, they could not conspire. *Id.*

Plaintiffs' Third Claim for Relief alleges that Defendant monopolized, attempted to monopolize, or combined or conspired with WordPerfect to monopolize the Group-Ware for NetWare market in violation of section 2 of the Sherman Act

To state a monopolization claim under Sherman Act § 2, the plaintiff must plead:

"1.  the possession of monopoly power in the relevant market and

2.  the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."

*Full Draw Productions v. Easton Sports, Inc.,* 182 F.3d 745, 756 (10th Cir.1999).

The elements of an attempt to monopolize under the Sherman Act § 2, are:

(1) relevant market (including geographic market and relevant product market);

(2) dangerous probability of success in monopolizing the relevant market;

(3) specific intent to monopolize; and

(4) conduct in furtherance of such an attempt.

*Id.,* 182 F.3d at 756.

Factors to be considered in determining dangerous probability include the defendant's market share, "the number and strength of other competitors, market trends, and entry barriers."

*Id.,* 182 F.3d at 756 (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 894 (10th Cir.1991)).

The probability of success in monopolizing the relevant market element is determined as of the time of the commencement of the alleged predatory scheme. *Colorado Interstate Gas v. Natural Gas Pipeline,* 885 F.2d 683, 695 n. 20 (10th Cir.1989).

Anticompetitive or exclusionary conduct under section 2 is "conduct constituting an abnormal response to market opportunities. Predatory practices are illegal if they impair opportunities of rivals and are not competition on the merits or are more restrictive than reasonably necessary for such competition," if the conduct appears "reasonably capable of contributing significantly to creating or maintaining monopoly power." *Instructional Sys.,* 817 F.2d at 649 (citations omitted). A defendant may avoid liability by showing a legitimate business justification for the conduct. *See Kodak,* 504 U.S. at 483, 112 S.Ct. 2072.

*Multistate Legal Studies v. Harcourt Brace Jovanovich Legal and Professional Publications, Inc.,* 63 F.3d 1540, 1550 (10th Cir.1995).

The elements of a claim for conspiracy to monopolize under § 2 of the Sherman Act, are:

(1) ... a combination or conspiracy to monopolize;

(2) ... overt acts done in furtherance of the combination or conspiracy;

(3) . . . a specific intent to monopolize; and

(4) . . . an appreciable effect upon commerce.

*Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1570 (10th Cir.1991)(quoting *Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1382 (10th Cir.1988)); *accord Full Draw Productions*, 182 F.3d at 756.

Plaintiffs' Fourth Claim for Relief alleges Defendant leveraged its monopoly power in the network operating system (NOS) market to gain a competitive advantage in the GroupWare for NetWare market in violation of § 2 of the Sherman Act, 15 U.S.C. § 2. Defendant contends that this claim is a cause of action not recognized by the Tenth Circuit or is a claim subsumed in Plaintiffs' attempt to monopolize claim.

Plaintiffs' Fifth Claim for Relief alleges Defendant unlawfully tied products in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14. In their initial brief in opposition to summary judgment, Plaintiffs conceded this claim, but later renewed it because they contend that the *Microsoft* and *Caldera* cases involved "free" tying or "bundling" of products. *See U.S. v. Microsoft*, 87 F.Supp.2d 30, 49–50 (D.D.C. 2000).

"A tying arrangement is an agreement by a party to sell one product *only* on the condition that the buyer also purchase a different or 'tied' product." *Foremost Pro Color [v. Eastman Kodak Co.,]*, 703 F.2d at 540. A tying arrangement is unlawful under section 3 of the Clayton Act where its effect "may be to substantially lessen competition or tend to create a monopoly in any line of commerce." 15 U.S.C. § 14. *This standard is met if (1) a substantial volume of commerce is foreclosed in the market for the tied product, or (2) the seller possesses economic power in the tying product and a not insubstantial volume*

*of commerce is foreclosed in the market for the tied product.* 3 J. von Kalinowski, [Antitrust Laws and Trade Regulation] § 14.03[3] [1983].

Under the second test, a seller has the requisite market power in the tying product if that product is "unique or desirable to customers." *Id.; United States v. Loew's, Inc.*, 371 U.S. 38, 40, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1215–16 (9th Cir.1977). The amount of commerce affected in the tied product is measured in terms of dollar volume. 3 J. von Kalinowski, supra § 14.03[3]. "The relevant figure is the total volume of sales tied and not the portion of sales allocable to the plaintiff." *Moore*, 550 F.2d at 1216; *Fortner Enterprises v. United States Steel Corp.*, 394 U.S. 495, 502[, 89 S.Ct. 1252, 22 L.Ed.2d 495] (1969).

\*   \*   \*   \*   \*   \*

Tying arrangements injure competitors of the seller of the tied product because these competitors are foreclosed from sales as a result of the ties. *Fortner*, 394 U.S. at 498–99[, 89 S.Ct. 1252]; *Moore*, 550 F.2d at 1212 n. 4. Tying also has an anticompetitive impact on buyers of the tied product, because their freedom of choice among products competing with the tied product is foreclosed. *Fortner*, 394 U.S. at 499, 89 S.Ct. at 1256.

*Black Gold, Ltd. v. Rockwool Indus.*, 729 F.2d 676, 684–85 (10th Cir.1984) (footnote omitted and underlined emphasis added) *opinion supplemented by* 732 F.2d 779 (1984).

The same showing regarding the standard for a Section 3 Clayton Act violation, underlined above, will also generally give rise to a claim under section 1 of the Sherman Act. *Id.*, 729 F.2d at 684 n. 5. In *Microsoft*, the district court restated the

elements of tying under section 1 of the Sherman Act as follows:

> Liability for tying under § 1 exists where (1) two separate "products" are involved; (2) the defendant affords its customers no choice but to take the tied product in order to obtain the tying product; (3) the arrangement affects a substantial volume of interstate commerce; and (4) the defendant has "market power" in the tying product market.... All four elements are required, whether the arrangement is subjected to a *per se* or Rule of Reason analysis.

*Microsoft,* 87 F.Supp.2d at 47 (citations omitted).

*Caldera v. Microsoft,* 72 F.Supp.2d 1295 (D.Utah), involved a claim for tying under §§ 1 and 2 of the Sherman Act and, like this case, under § 3 of the Clayton Act.

Plaintiffs' Seventh Claim for Relief alleges Defendant and WordPerfect contracted, combined and conspired to monopolize in violation of Utah's Antitrust law, Utah Code Ann. § 76–10–911, et seq. This is the Utah state law equivalent of Plaintiffs' federal section 1 Sherman Act claim. As noted above, the parties stipulated that these state claims were duplicative of the federal claims.

Plaintiffs' Eighth Claim for Relief alleges Defendant monopolized, attempted to monopolize, and has combined and conspired with WordPerfect to monopolize the GroupWare for NetWare market in violation of Utah Code Ann. § 76–10–911, et seq. This is the Utah state law equivalent of Plaintiffs' federal Sherman Act, § 2 claim; again, stipulated to be duplicative.

### IV. Relevant Market

Relevant market is a necessary predicate for all of Plaintiffs' claims except for their claim of conspiracy under section 2 of the Sherman Act (Plaintiffs' Third Claim for Relief),

> Market definition is a question of fact. Definition of the relevant market re

quires first "a determination of the product market." "This inquiry necessitates an examination of which commodities are 'reasonably interchangeable for consumers for the same purposes.'"

*Reazin,* 899 F.2d at 975 (quoting *Westman Comm'n Co. v. Hobart Int'l,* 796 F.2d 1216, 1220 (10th Cir.1986) (quoting *E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 395, 76 S.Ct. 994, 100 L.Ed. 1264 (1956))).

Plaintiffs bear the burden of proof of establishing a market for antitrust purposes.

■ "A properly-defined product market thus must take account of which products, if any, compete with the defendant's product, and must include reasonably interchangeable substitute products that limit the defendant's ability to sustain an increase in price above competitive levels." *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.,* 108 F.Supp.2d 549, 576 (W.D.Va.2000)

■ Defendant contends that Plaintiffs must establish relevant market and other elements, such as dangerous probability of monopolization, by expert opinion. Because Plaintiffs' expert's testimony has been excluded, Defendant contends that Plaintiffs cannot meet their burden. In support, Defendant cites the Eleventh Circuit's holding that construction of a relevant economic market or a showing of monopoly power in that market cannot be based upon lay opinion testimony. *Colsa Corporation v. Martin Marietta Services, Inc.,* 133 F.3d 853, 855 n. 4 (11th Cir.1998).

Other courts hold that the failure to provide such expert testimony on issues of relevant market "augurs strongly in favor of granting summary judgment against an antitrust plaintiff," *Drs. Steuer and Latham, P.A. v. Nat'l Medical Enter., Inc.,* 672 F.Supp. 1489, 1512 n. 25 (D.S.C.1987), or that in the absence of such expert testi

mony "or other credible evidence to support an inference of market power" any such inference would be sheer speculation. *Forro Precision, Inc. v. IBM*, 673 F.2d 1045, 1058–59 (9th Cir.1982).

Plaintiffs rely on cases they assert established a relevant market by lay testimony. *See e.g. General Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795 (8th Cir. 1987) (evidence established relevant market without expert testimony) and *Bacchus Indus., Inc. v. Arvin Indust.*, 939 F.2d 887, 894 (10th Cir.1991) (lay witness testimony established market share).

In the absence of controlling case law from the Tenth Circuit on this area, the court will reject the absolute rule of the Eleventh Circuit in favor of the rule of other jurisdictions. The absence of expert testimony on the issue of relevant market and like issues is not, *per se*, fatal to a plaintiff's antitrust claims. In other words, expert testimony is not required, but in its absence a plaintiff must show by other evidence sufficient facts from which a jury could infer market share, market power, relevant market, monopolization, dangerous probability of monopolization, and the like.

In this case, there is an absence of evidence from which a reasonable jury could find that a relevant market, as described by Plaintiffs as "GroupWare for NetWare," exists. "[M]arket share alone is insufficient to establish market power." *Bright v. Moss Ambulance Service, Inc.*, 824 F.2d 819, 823–24 and n. 5 (10th Cir. 1987) (explaining similar concepts of market power, monopoly power and market share). Plaintiffs assert "GroupWare for NetWare" is a submarket. Although small or specialized, a submarket can still be a definable relevant market for antitrust purposes if there is sufficient evidence supporting such a claim. In *Brown Shoe Co. v. United States*, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), the Court ex-

amined whether a submarket was a relevant product market for antitrust purposes of examining a vertical merger:

> The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it. However, within this broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes. *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 593—595, 77 S.Ct. 872, 1 L.Ed.2d 1057. The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors.

*Brown Shoe*, 370 U.S. at 325, 82 S.Ct. 1502 (footnotes omitted).

In *Eastman Kodak v. Image Technical Services, Inc.*, the Supreme Court noted that in "some instances one brand of a product can constitute a separate market" that can be "determined only after factual inquiry into commercial realities faced by consumers." 504 U.S. 451, 482, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (quotation omitted).

The evidence in this case was insufficient to show that there was a relevant market as described by Plaintiffs under the factors listed in *Brown Shoe* or *Kodak.* There is insufficient evidence from which to find recognition of a separate "GroupWare for NetWare" market by the industry or consumers. There is insufficient evidence from which to find consumer purchasing patterns or switching costs in relation to such a market. Because there is no evidence on the costs of the various prod-

ucts or of how the consumer would react to a price increase in such costs, there is no evidence of price sensitivity. There is no evidence of consumer preferences. The only evidence of sellers' experiences was that of Plaintiffs. The little evidence that was offered by lay witnesses on the issue of relevant market related only to the experiences of Plaintiffs in Brazil and for a short, and unprofitable, time in the United States. Such evidence focused exclusively on how Plaintiffs' officers, employees and marketing firm viewed their own products' market. Because Plaintiffs have alleged a world-wide market, this skimpy evidence of Plaintiffs' own experiences is insufficient to establish a relevant world-wide product market as described by Plaintiffs. Further, Plaintiffs' evidence failed to address such issues as actual prices and therefore is not helpful to determine substitutability in the world-wide market.

In sum, the totality of Plaintiffs' evidence is insufficient to establish their definition of the relevant market. No reasonable jury could find a relevant antitrust market from Plaintiff's scant evidence. Because there is no evidence of relevant market, or of market power, it would not be possible for a reasonable jury to find the possession of monopoly power in the relevant market or dangerous probability of success in monopolizing the relevant market.

Further, in regards to the tying claim, it involves two alleged incidents of tying of products. First, a five-month promotion in late 1994, where a coupon for a five-user version of GroupWise 4.1 was given away free with the ten-user or greater NetWare upgrades. The second incident was the integration of GroupWise with NetWare for Small Business in 1998. Mr. Thiollier testified that consumers could buy Group-Wise and NetWare separately. (Tr. at 931–32). Thus, there is no evidence that Defendant afforded its customers no choice but to take the tied product in order to obtain the tying product or otherwise conditioned acquisition of the one product upon the purchase of the other. Therefore, even if there were evidence from which a reasonable jury could find that Defendant had economic power in the tying product or that a substantial volume of commerce is foreclosed in the market for the tied product, and the court finds there is no such evidence, a reasonable jury still could not find a violation of 15 U.S.C. § 15. *See Sports Racing Services, Inc. v. Sports Car Club of America, Inc.,* 131 F.3d 874, 887 (10th Cir.1997) (section 1 claim) ("The essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.") (quoting *Eastman Kodak,* 504 U.S. at 464 n. 9, 112 S.Ct. 2072).

At trial, evidence of the "red box" dispute, the OEM agreement, etc., was admitted upon Plaintiffs' representation that the evidence would be linked to their antitrust claims. At the end of Plaintiffs' evidence, there was no such linkage. As noted in the *Spectrum Sports* case:

> The purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market. The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself. It does so not out of solicitude for private concerns but out of concern for the public interest. *See, e.g.,* . . . *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). Thus, this Court and other courts have been careful to avoid constructions of § 2 which might chill competition, rather

than foster it. It is sometimes difficult to distinguish robust competition from conduct with long-term anticompetitive effects; moreover, single-firm activity is unlike concerted activity covered by § 1, which "inherently is fraught with anticompetitive risk." *Copperweld*, 467 U.S. at 767–769, 104 S.Ct. 2731. For these reasons, § 2 makes the conduct of a single firm unlawful only when it actually monopolizes or dangerously threatens to do so. *Id.*, at 767, 104 S.Ct. 2731. The concern that § 2 might be applied so as to further anticompetitive ends *is plainly not met by inquiring only whether the defendant has engaged in "unfair" or "predatory" tactics. Such conduct may be sufficient to prove the necessary intent to monopolize, which is something more than an intent to compete vigorously, but demonstrating the dangerous probability of monopolization in an attempt case also requires inquiry into the relevant product and geographic market and the defendant's economic power in that market.*

We hold that petitioners may not be liable for attempted monopolization under § 2 of the Sherman Act absent proof of a dangerous probability that they would monopolize a particular market and specific intent to monopolize.

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993) (citations partially omitted and underlined emphasis added).

Plaintiffs have failed to present evidence from which a reasonable jury could find a relevant product market and Defendant's economic power in that market. Defendant is entitled to judgment as a matter of law on the First, Second, Fourth and Fifth Claims for Relief and on the monopolization and attempt to monopolize claims in the Third Claim for Relief.

## V. Conspiracy

■ As an initial matter, the court finds there is evidence from which a reasonable jury could find that in the time period between March 21, 1994, and June 24, 1994, Defendant Novell and WordPerfect maintained independent economic consciousness. Therefore, the case *Copperweld Corp. v. Independence Tube Corporation*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), does not apply. In *Copperweld*, the Supreme Court held that a parent company and a wholly owned subsidiary were not legally capable of conspiring with each other under section 1 of the Sherman Act because their coordinated activity must be viewed as that of a single enterprise for section 1 purposes because they have a "complete unity of interest." 467 U.S. at 771, 104 S.Ct. 2731. Because a jury could find Novell and WordPerfect maintained independent economic consciousness after they decided to merge but before the merger was complete it was not impossible for them to conspire within the meaning of the Sherman Act. *International Travel Arrangers, v. NWA, Inc.*, 991 F.2d 1389, 1397–98 (8th Cir.1993).

■ Next, Plaintiffs are correct that a definition of a relevant market is not necessary to their claim of conspiracy under section 2 of the Sherman Act (Plaintiffs' Third Claim for Relief).

Conspiring to monopolize is a separate offense under section 2, requiring less in the way of proof than the other section 2 offenses. In this context, a plaintiff need show defendants specific intent to monopolize "any part" of interstate commerce. The market power in a "relevant market" need not be proved.

*Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369 1376 (10th Cir.1979). *Accord Monument Builders of Greater Kansas City, Inc. v. American Cemetery*

*Assn. of Kan.*, 891 F.2d 1473, 1483 (10th Cir.1989). However, Plaintiffs do need to show an intent to monopolize the designated part of interstate commerce.

Defendant contends the case *Matsushita Electric Indus., Inc. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), limits the inferences that can be made from its acts. *Matsushita* provides:

> But antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case. Thus, in *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), we held that conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy. *Id.*, at 764, 104 S.Ct. 1464. *See also Cities Service, supra*, 391 U.S. at 280, 88 S.Ct. 1575. To survive a motion for summary judgment or for a directed verdict, a plaintiff seeking damages for a violation of § 1 must present evidence "that tends to exclude the possibility" that the alleged conspirators acted independently. 465 U.S. at 764, 104 S.Ct. 1464. Respondents in this case, in other words, must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed respondents. *See Cities Service, supra*, 391 U.S. at 280, 88 S.Ct. 1575.

*Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Plaintiffs contend that *Matsushita* applies only to section 1 cases and not to section 2 cases. At least one court has applied *Matsushita* to a section 2 claims. *TV Comm. Network, Inc. v. ESPN, Inc.*, 767 F.Supp. 1062, 1074 (D.Colo.1991) (in section 2 claim applying *Matsushita* to find that where defendants have no rational economic motive to conspire, their con-

duct does not give rise to an inference of conspiracy).

The court need not resolve the issue of the applicability of *Matsushita*, because Plaintiffs have failed to establish evidence from which a reasonable jury could find a "conscious commitment to a common scheme," *Reazin*, 899 F.2d at 964, between Word Perfect and Defendant during the period between when the merger was announced and when it was completed.

There is no direct evidence of such an agreement or conspiracy. However, it is not necessary that there be such direct evidence; conspiracy may be proven by circumstantial evidence. *Monument Builders*, 891 F.2d at 1481 (section 1 claim).

Cases describing what is necessary to infer a conspiracy generally arise in the context of claims under section 1 of the Sherman Act. *E.g. Oreck Corp. v. Whirlpool Corp.*, 639 F.2d 75 (2nd Cir. 1980). The court finds them equally applicable to claims of conspiracy under section 2 of the Sherman Act. The "mere showing of close relations or frequent meetings between alleged conspirators to violate antitrust laws will not meet plaintiff's burden absent evidence which would permit the inference that those close ties led to an illegal agreement." *Oreck*, 639 F.2d at 79.

> While it is of course true that "[i]llegal conspiracies ... can rarely be proved through evidence of explicit agreement, but must generally be proved through inferences from the conduct of the alleged conspirators," *Venture Technology, Inc. v. National Fuel Gas Co.*, 685 F.2d 41, 45 (2d Cir.), *cert. denied*, 459 U.S. 1007, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982), the plaintiff must nonetheless present evidence of "qualitative value in demonstrating that the parties actually entered into a conspiracy." *Id.* at 48. A showing of close relationships between

the alleged conspirators, or frequent meetings between them, without more, will not sustain the plaintiff's burden. *Oreck v. Whirlpool Corp.*, 639 F.2d 75, 79 (en banc) (2d Cir.1980), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981). Moreover, a mere showing that a customer such as PBA had the economic power to affect a supplier, ... in its dealings with another customer ... does not constitute sufficient circumstantial evidence of an unlawful agreement or conspiracy. *Id.* *Century Air Freight, Inc. v. American Airlines, Inc.*, 597 F.Supp. 564, 570 (S.D.N.Y.1984).

In *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), the Supreme Court considered what evidence is sufficient to create a jury issue on whether a manufacturer and some of its distributors were parties to an agreement or conspiracy prohibited by the antitrust laws. Under *Monsanto*, evidence must be produced reasonably tending to prove that the manufacturer "and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" 465 U.S. at 763, 104 S.Ct. 1464 (quoting *Edward J. Sweeney & Sons v. Texaco, Inc.*, 637 F.2d 105, 111 (3d Cir.1980)).

In this case the evidence produced by Plaintiffs at trial is that WordPerfect and Novell representatives met in the period between merger announcement and completion. Among other things they discussed were MHS and integration. Some persons in the two companies were in favor of MHS and some not. Other persons were loyal to the WordPerfect Office product they had previously developed and/or marketed. This unremarkable evidence falls far short of that necessary for a reasonable jury to find a conscious commitment to a common scheme and instead shows the opposite, that the companies had different views on how things should proceed during the critical time.

The alleged pre-release of APIs to WordPerfect is admitted speculation by Plaintiffs' witnesses. Further, even assuming it occurred, the totality of Plaintiffs's evidence in support of its theory of a conspiracy to shift the installed base of MHS customers to GroupWise does not give rise to an inference of an agreement between the companies between March 21 and June 24, 1984. Almost all of the alleged actions were taken after the merger was complete, when it was a legal impossibility for Novell and WordPerfect to conspire for antitrust purposes.

There is no evidence of motive as indirect proof of agreement. All of Defendant's actions had rational business purposes in the admittedly fiercely competitive and rapidly changing market. All of Plaintiffs' evidence is equally as susceptible to showing independent conduct during the relevant period as showing an agreement.

■ Plaintiffs have shown only communication and an opportunity to agree, but have failed to offer any credible evidence of agreement. Plaintiffs' evidence is mere speculation and conjecture, and that will not suffice because a reasonable jury could not find a section 2 conspiracy based upon such speculation and conjecture. Defendant is entitled to judgment as a matter of law on the section 2 conspiracy claim (Plaintiffs' Third Claim for Relief).

## VI Antitrust Injury

Defendant contends that it is entitled to judgment as a matter of law because Plaintiffs lack standing to bring this action because they have failed to show an antitrust injury.

To maintain standing to bring an antitrust claim under § 4 of the Clayton

Act, 15 U.S.C. § 15, a plaintiff must show (1) an "antitrust injury;" and (2) a direct causal connection between that injury and a defendant's violation of the antitrust laws. As we have stated in earlier explanations of this two-pronged test:

[t]o meet the first prong [plaintiffs] must allege a business or property injury, an antitrust injury, as defined by the Sherman Act. An antitrust injury is defined as an injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. A violation of the Act without resultant injury to the [plaintiffs] is insufficient to confer standing. To establish the second prong of antitrust standing, [plaintiffs] must show the antitrust injury resulted directly from [defendants'] violation of antitrust law.

*City of Chanute,* 955 F.2d at 652 (internal citations and quotations omitted). Factors to consider in evaluating antitrust standing include:

(1) the causal connection between the alleged antitrust violation and the harm; (2) improper motive or intent of defendants; (3) whether the claimed injury is one sought to be redressed by antitrust damages; (4) the directness between the injury and the market restraint resulting from the alleged violation; (5) the speculative nature of the damages claimed; and (6) the risk of duplicative recoveries or complex damage apportionment.

*Id.* n. 14 (citing *Reazin v. Blue Cross & Blue Shield of Kan., Inc.,* 899 F.2d 951, 962 n. 15 (10th Cir.1990)); *see generally Associated Gen. Contractors v. California State Council of Carpenters,* 459 U.S. 519, 534–45[, 103 S.Ct. 897, 74 L.Ed.2d 723] (1983). The enumerated factors are not "black-letter rules," however, but merely "give more specificity to the inquiry mandated by the two-part

test." *Sharp v. United Airlines, Inc.,* 967 F.2d 404, 406, 407 n. 2 (10th Cir. 1992).

*Sports Racing Services, Inc. v. Sports Car Club of America, Inc.,* 131 F.3d 874, 882 (10th Cir.1997).

"Antitrust injury does not arise for purposes of § 4 of the Clayton Act, ..., until a private party is adversely affected by an *anticompetitive* aspect of the defendant's conduct". *ARCO v. USA Petro. Co.,* 495 U.S. 328, 340, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) (emphasis in original).

A private plaintiff may not recover damages under § 4 of the Clayton Act merely by showing "injury causally linked to an illegal presence in the market." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Instead, a plaintiff must prove the existence of "*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Ibid.* (emphasis in original). In *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), we reaffirmed that injury, although causally related to an antitrust violation, nevertheless will not qualify as "antitrust injury" unless it is attributable to an anti-competitive aspect of the practice under scrutiny, "since '[i]t is inimical to [the antitrust] laws to award damages' for losses stemming from continued competition." *Id.,* at 109–110, 107 S.Ct. 484 (quoting *Brunswick, supra,* 429 U.S. at 488, 97 S.Ct. 690).

*ARCO,* 495 U.S. at 334, 110 S.Ct. 1884 (emphasis in original).

■ In this case the evidence was that immediately after the merger was announced, Lantec shut down its development and marketing operations. By the

end of May 1994, Lantec had determined it was going out of business and sent Defendant's counsel a letter saying it was going out of business as of June 1, 1994. (Tr. at 1182). This decision to exit was prior to completion of the merger and prior to the alleged antitrust actions such as the tying of products. Although there is some evidence that there were attempts to sell Lantec's products after the merger was announced, Lantec had effectively existed the market in June 1994, and thus was no longer a potential entrant in the market it defines as "GroupWare for NetWare."

Evidence of Novell's failure to develop or support MHS after June 1994, can not be evidence of an antitrust injury to Lantec, which had already exited the market as of June 1, 1994. Similarly, evidence of Novell's alleged strategy to migrate its installed base from MHS to its newer products, and evidence of tying products in late 1994 and 1998, are not evidence of antitrust injury because Plaintiffs had already made their decision and exited the market prior to either tying incident. After it had exited the market, Lantec was no longer a potential entrant, but had already dropped from the market.

Defendant is entitled to judgment as a matter of law on all of its antitrust claims because Plaintiffs have failed to show an antitrust injury and a direct causal connection between that injury and a violation of the antitrust laws by Defendant.

### VII. Plaintiffs' Oral Motion to Alter Order Excluding Expert Testimony of Dr. Beyer

■ During the hearing on the Motion for Judgment as a Matter of Law, Plaintiffs also moved to have the court alter or amend its February 13, 2001, Order Granting Motion to Exclude Testimony of Dr. John C. Beyer. Plaintiffs seek to have the court delete the following portion from page 16 of that Order:

The purpose of the court's gatekeeper role is to avoid having the jury consider testimony that is unreliable. Dr. Beyer is clearly a hired gun and any semblance of objectivity is lacking. His opinions lack all indicia of reliability and as such can only confuse and mislead the jury.

Order Granting Motion to Exclude Testimony of Dr. John C. Beyer, at 16.

Plaintiffs seek to exclude that portion because the characterization of his testimony may affect Dr. Beyer's personal standing in his professional community and/or reflect negatively upon Plaintiffs' counsel.

The court will not alter or amend its order. It accurately reflects the record and the basis of the court's ruling.

### VIII. Conclusion

Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Finley v. United States,* 82 F.3d 966, 968 (10th Cir.1996) (quoting *Q.E.R., Inc. v. Hickerson,* 880 F.2d 1178, 1180 (10th Cir.1989)). In this case, Defendant has met its burden of showing that the totality of admissible evidence at trial, and all reasonable inferences from that evidence, does not show a sufficient evidentiary basis to establish any of the following: (1) a relevant market as defined by Plaintiffs; (2) a conspiracy or agreement between separate and distinct entities to monopolize or restrain trade; or (3) that Plaintiffs suffered an antitrust injury. Because these have not been shown, Defendant is entitled to judgment on Plaintiffs' federal antitrust claims and the corresponding claims under Utah antitrust law. Because the court is granting judgment for Defendant for the reasons stated above, it is not necessary for the court to reach Defendant's numerous other contentions that Plaintiffs' evidence does not establish facts from which a reasonable jury

could find in their favor on the other elements of the antitrust claims.

It is therefore

ORDERED that Defendant's Motion for Judgment as a Matter of Law is GRANTED and judgment shall be granted in favor of Defendant and against Plaintiffs Lantec and Lantec Brazil on the First, Second, Third, Fourth, Fifth and Seventh and Eighth Claims for Relief.  It is further

ORDERED that Plaintiffs' oral Motion to Amend the February 13, 2001, Order Granting Motion to Exclude Testimony of Dr. John C. Beyer is DENIED.